# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRESERVATION PITTSBURGH**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11cv889 |
| | ) | **Electronic Filing** |
| **MARY CONTURO**, Executive Director | ) | |
| SPORTS AND EXHIBITION | ) | |
| AUTHORITY OF PITTSBURGH AND | ) | |
| ALLEGHENY COUNTY, | ) | |
| **ROB STEPHANY**, Executive Director | ) | |
| THE URBAN REDEVELOPMENT | ) | |
| AUTHORITY OF PITTSBURGH, | ) | |
| **LUKE RAVENSTAHL**, MAYOR | ) | |
| CITY OF PITTSBURGH, | ) | |
| **DAN ONORATO**, COUNTY | ) | |
| EXECUTIVE, ALLEGHENY COUNTY, | ) | |
| **RAY LAHOOD**, SECRETARY, | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF TRANSPORTATION, | ) | |
| **VICTOR M. MENDEZ**, | ) | |
| ADMINISTRATOR, FEDERAL | ) | |
| HIGHWAY ADMINISTRATION, | ) | |
| and **RENEE SIGEL**, PENNSYLVANIA | ) | |
| DIVISION ADMINISTRATOR, | ) | |
| FEDERAL HIGHWAY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

September 9, 2011

**I.     INTRODUCTION**

Plaintiff, Preservation Pittsburgh, filed this action for declaratory and injunctive relief against Defendants, Ray LaHood ("LaHood"), Secretary of the United States Department of Transportation, Victor Mendez ("Mendez"), Administrator of the Federal Highway Administration ("FHWA"), Renee Sigel ("Sigel"), FHWA Pennsylvania Division Administrator (collectively the "Federal Defendants"), Mary Conturo ("Conturo"), Executive Director of the

Sports and Exhibition Authority of Pittsburgh and Allegheny County (the "SEA"), Rob Stephany ("Stephany"), Executive Director of the Urban Redevelopment Authority of Pittsburgh (the "URA"), Luke Ravenstahl ("Ravenstahl"), Mayor of the City of Pittsburgh (the "City"), and Dan Onorato ("Onorato"), Executive of Allegheny County (the "County") (collectively the "City Defendants"). The Federal Defendants have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Conturo has filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Ravenstahl has filed a motion to dismiss, adopting the arguments set forth in Conturo's brief in support. Plaintiff has responded and the matter is now before the Court.

## II. STATEMENT OF THE CASE

The Civic Arena is a public building dedicated in 1961, and owned by the SEA. Complaint ¶ 32. From 1967 until 2010, the Civic Arena was primarily utilized as the home of the Pittsburgh Penguins (the "Penguins") hockey team. *Id.* In March of 2007, SEA, the City, the County and the Commonwealth of Pennsylvania entered into an agreement with the Lemieux Hockey Group, LP, the owner of the Penguins to construct a new arena and make the Civic Arena site available for redevelopment. Complaint ¶¶ 35 & 36.

Because the Pennsylvania Historical and Museum Commission ("PHMC") had determined in 2001 that the Civic Arena was eligible for inclusion in the National Register of Historical Places, the SEA was required by the Pennsylvania Historic Preservation Act to consult with the PHMC prior to "demolishing, altering, or transferring" the Civic Arena property. Complaint ¶ 34; 37 PA. CONS. STAT. ANN. § 508(a)(1). Beginning in early 2010, SEA engaged in consultation with the PHMC to identify and evaluate a range of redevelopment options for the

2

Civic Arena site. Declaration of Mary Conturo ("Conturo Decl.") ¶ 4. Over an eight (8) month period, the SEA held meetings with the PHMC and over thirty (30) other interested parties as part as the consultation process. *Id.* On September 16, 2010, the SEA voted to demolish the Civic Arena and redevelop the 28 acre site. Complaint ¶ 44.

On October 19, 2010, the SEA submitted a Project Development Plan application to the City of Pittsburgh Planning Commission. Conturo Decl. ¶ 6. The Planning Commission held a public hearing on the SEA's demolition plan on November 23, 2010, and at the conclusion of the hearing, unanimously approved the plan. *Id.* On the same day, Plaintiff and other interested groups filed a Historic Nomination of the Civic Arena with the City of Pittsburgh Historic Review Commission to have the Arena designated as a "City Designated Historic Structure." Conturo Decl. ¶ 7. The petition was rejected at every level of review culminating in a vote against designation by the Pittsburgh City Council on June 28, 2011. Conturo Decl. ¶ 8. In July of 2011, the SEA executed a contract with a demolition contractor for the demolition of the Cvic Arena. Conturo Decl. ¶ 9.

Plaintiff contends that the demolition of the Civic Arena is an integral part of a plan to redevelop the site using federal-aid highway funds from the FHWA, beginning with the construction of a traditional street-grid system to establish a conventional urban block setting. The Arena's demolition, therefore, is inextricably related to a transportation project requiring approval of the FHWA. Such approval must be exercised in conformance with Section 106 of the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470f, Section 4(f) of the Department of Transportation Act ("DOTA"), 23 U.S.C. § 138, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2). Plaintiff argues that the SEA's premature demolition of the Civic Arena will evade the evaluations of alternatives to avoid or mitigate the destruction of historic properties mandated by the above statutes.

3

### III. LEGAL STANDARD FOR MOTION TO DISMISS

Under a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of persuasion that the court has subject matter jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). There are two categories of Rule 12(b)(1) motions: a facial attack on the complaint, and a factual attack that challenges the plaintiff's facts "at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-892 (3d Cir. 1977). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

If the attack is factual, however, the court is not confined to the allegations in the complaint and "can look beyond the pleadings to decide factual matters relating to jurisdiction." *Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000) (citation omitted). The Court, therefore, must weigh the evidence relating to jurisdiction, "with discretion to allow affidavits, documents, and even limited evidentiary hearings," and "accords plaintiff's allegations no presumption of truth." *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002). Further, with a factual challenge, the plaintiff bears the burden of proving that jurisdiction does, in fact, exist. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556

4

(2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960, 173 L. Ed. 2d 868 (May 18, 2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Supreme Court explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555).

The United States Court of Appeals for the Third Circuit expounded on this standard stating:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)(citations omitted). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d at 210-211. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). Finally, in applying this plausibility standard, the reviewing court must make a context-specific inquiry, drawing on its judicial experience and common sense. *Id.*

5

## IV. DISCUSSION

### A. NEPA and the Administrative Procedures Act

Plaintiff alleges that the FHWA is in violation of NEPA in connection with the redevelopment of the Civic Arena site by failing to complete an environmental impact statement in accordance with 42 U.S.C. § 4332. Complaint ¶ 60. The Federal Defendants argue that this Court has no jurisdiction under NEPA because there is no federal involvement in this matter and the Civic Arena project is not a "major federal action." All Defendants also argue that this Court can only review an agency NEPA decision through the Administrative Procedures Act and such review requires "final agency action," which does not exist in the instant case.

NEPA requires that "all agencies of the Federal Government shall . . . include **in every recommendation or report on proposals for legislation and other major Federal actions** significantly affecting the quality of the human environment, a detailed statement by the responsible official on . . . the environmental impact of the proposed action." 42 U.S.C. § 4332(C)(i)(emphasis added). NEPA is "primarily a procedural statute . . . designed to ensure that environmental concerns are integrated into the very process of [federal] agency decisionmaking." *Morris County Trust for Historic Preservation v. Pierce*, 714 F.2d 271, 274 (3d Cir. 1983). "NEPA exists to ensure a process, not to ensure any result." *Concerned Citizens Alliance, Inc. v. Slater*, 176 F.3d 686, 705 (3d Cir. 1999)(quoting *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996). First and foremost, an action must be "federal" to trigger the application of NEPA. 42 U.S.C. § 4332(2)(C); see also 40 C.F.R. § 1508.18(a) ("Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies . . . .").

The federal regulations define legislation to include "a bill or legislative proposal to Congress developed by or with the significant cooperation and support of a Federal agency, but does not include requests for appropriations." 40 C.F.R. § 1508.17; *see also Andrus v. Sierra Club*, 442 U.S. 347, 364-365 (1979) (holding that "appropriation requests constitute neither 'proposals for legislation' nor 'proposals for . . . major Federal actions'" within NEPA's procedural requirements). Therefore, the City Defendants' efforts to obtain funding from the FHWA[1] do not qualify as a proposal for legislation under NEPA requirements.

Further, major federal action is defined under the regulations to include "actions with effects that may be major and which are potentially subject to Federal control and responsibility," including "projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18. Courts have held that in order to trigger NEPA requirements, the federal agency must be prepared to undertake an "'irreversible and irretrievable commitment of resources' to an action that will affect the environment." *Alliance for Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166, 174 (D.D.C. 2000); *Wyoming Outdoor Council v. U.S. Forest Service*, 165 F.3d 43, 49 (D.C. Cir. 1999) (quoting *Mobil Oil Corp. v. FTC*, 562 F.2d 170, 173 (2d Cir. 1977)).

There is simply no evidence in this record that federal action, let alone "major" federal action, has occurred in this case. Plaintiff is unable to direct this Court to any fact that establishes federal agency participation in the redevelopment of the Civic Arena site. Plaintiff, however, attempts to establish a federal nexus alleging that federal funding is the "only realistic option for securing the funds needed to underwrite the significant site work costs." *See* Exhibit

---

[1] Plaintiff alleges that the City Defendants have sought congressionally earmarked funding to develop the street-grid system at the Arena site "including a $974,000 earmark in the FY 2010 appropriations omnibus bill. . . Congress has not yet approved an earmark for the [project]." Complaint ¶ 39.

7

2, to Plaintiff's Brief, Poole Aff. ¶ 5. This statement is speculative, and even if true, does not establish federal involvement.

The mere possibility of federal funding in the future is too tenuous to convert a local project into federal action. In *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193 (D.C. Cir. 2003), the plaintiff contended that the Federal Transit Authority's failure to conduct an environmental review of a rail transit project violated NEPA, NHPA, and Section 4(f) of DOTA. *Coalition for Underground Expansion v. Mineta*, 333 F.3d at 195. To support federal status, the plaintiff relied on the allegations in the complaint that the rail system could not operate without federal funding, that the FTA was financing construction of a separate rail extension and that the FTA would provide future funding[2]. *Id.* at 196-197. In affirming the district court's dismissal under Rule 12(b)(1), the court stated:

> The declaration submitted by the FTA Regional Director below avers that the FTA received no request or application to fund the [rail extension project], and the Coalition does not dispute this statement. That the parties anticipate, even intend, future federal funding does not ensure it will come about. . . To seek review under the APA, the Coalition must allege the FTA is "irretrievably committed to providing funds for [project]. . . This it cannot do.

*Id.* at 197. *See also Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1101 (9th Cir. Mont. 2007) ("we cannot base our evaluation of the federal nature of the [project] on speculation about the future federal funding of its constituent projects").

---

[2] Plaintiff also argued that the rail system was intentionally "segmented" to avoid environmental review of the extension project. The court stated "It is not impermissible, however, to structure construction and funding so as to avoid the burden of environmental review--this is precisely what the state of Maryland did in [*Macht v. Skinner,* 916 F.2d 13 (D.C. Cir. 1990)] when it decided to scale back its proposed line and withdraw its federal funding request for the express purpose of avoiding the delay environmental review might cause. [] Nor is there any indication here that the construction has been structured in a way that will "lead to evaluation of segments in isolation of one another, thereby creating a misleading picture of the impact of the project as a whole." *Id.* at 198 n.8 (citing *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 299 (D.C. Cir. 1987)).

Moreover, even if the SEA were to apply for and/or obtain funding for part of the redevelopment, the use of federal funds in and of itself does not federalize the project for purposes of compliance with NEPA. There are no clear standards for defining the point at which federal participation transforms a state or local project into major federal action. *See Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1039 (9th Cir. 1985)("Marginal federal action will not render otherwise local action federal."). While significant federal funding can turn "what would otherwise be" a local project into a major federal action, *Alaska v. Andrus*, 591 F.2d 537, 540 (9th Cir. 1979), consideration must be given to a "great disparity in the expenditures forecast for the state [and county] and federal portions of the entire program." *See Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 329 (9th Cir. 1975) (federal funding amounting to just 10% of total estimated expenditures does not federalize a project for purposes of NEPA application.); *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (noting that the federal funding of a large portion of a preliminary study was "minuscule in comparison with the cost of the total bridge project" and did not rise to the level of major federal action); *Save the Bay, Inc. v. U.S. Corps of Engrs.*, 610 F.2d 322, 327 (5th Cir. 1980) (Corps of Engineers' issuance of a pipeline permit did not turn construction of private manufacturing plant into a major federal action because only "incidental federal involvement."); *Save Barton Creek Ass'n v. FHWA*, 950 F.2d 1129, 1137 (5th Cir. 1992) (no major federal action where "[t]here has been no federal commitment and only minimal federal intervention" in helping to compile NEPA compliance documentation so as to preserve future state eligibility for federal funding).

This Court agrees that the mere possibility of future funding of the local Civic Arena redevelopment project does not create a federal nexus. Moreover, there is no evidence that such possible future involvement by the FHWA will be of any significance. Absent the requisite involvement in the project by a federal agency, the project simply does not involve major federal

action, and this Court lacks authority to order an environmental impact statement or to constrain private actions under NEPA. *See Gettysburg Battlefield Pres. Ass'n v. Gettysburg College*, 799 F. Supp. 1571, 1577 (M.D. Pa. 1992) (citing *Environmental Rights Coalition, Inc. v. Austin*, 780 F. Supp. 584, 594 (S.D. Ind. 1991)).

Further, because there is no private right of action under NEPA, a district court's review of an agency's action or inaction under the NEPA is available only through the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq*. *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002); *see also Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 670-674 (E.D. Pa. 2005). There are two reviewability requirements of the APA, final agency action and no other adequate remedy. 5 U.S.C. § 704; *Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d at 671. Agency action under the APA includes the failure to act. *See* 5 U.S.C. § 551(13) ("'Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."). When faced with an agency's failure to act, "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

Plaintiff argues that final agency action is not a jurisdictional predicate in the Third Circuit when the challenge is to alleged segmentation of a single project into federal and nonfederal components in order to avoid compliance with federal environmental laws. Plaintiff contends that the Court of Appeals for the Third Circuit, in *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F. 2d 231 (3d Cir. 1980), explicitly held that the absence of final agency action does not bar the district court from exercising jurisdiction over a NEPA

10

lawsuit. Plaintiff also contends that *Susquehanna Alliance* is directly analogous to the instant action. The Court disagrees.

In *Susquehanna Valley*, an alliance of local residents (the "Alliance") alleged that the plan by which the Nuclear Regulatory Commission ("NRC") and associated agencies intended to decontaminate water from a nuclear power station violated provisions of the Atomic Energy Act, NEPA, and the Federal Water Pollution Control Act. Because of an accident at the Three Mile Island Nuclear Power Station ("TMI"), 600,000 gallons of water, contaminated by a high level of radioactive waste, had accumulated in the reactor containment building and 250,000 gallons of water contaminated by an intermediate level of radioactive waste had accumulated in an auxiliary building and associated tanks. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F. 2d at 234. The NRC authorized the operators of TMI to purchase, erect, and operate a system for treatment of a portion of the contaminated water for eventual release into the Susquehanna River. *Id.* The Alliance alleged that such authorization was a violation of NEPA by the defendants[3]. *Id.* at 239.

Specifically, the Alliance charged that by fragmenting the disposal of the contaminated water, and authorizing the erection and operation of a treatment system to dispose of the intermediate level contaminated water, without preparation of a final environmental impact statement, the NRC violated its duty under NEPA. *Id.* at 239-240. The court noted that such "segmentation of a large or cumulative project into smaller components in order to avoid designating the project a major federal action has been held to be unlawful." *Id.* at 240. Because the adequacy of NRC compliance with NEPA in any license proceeding was directly reviewable

---

[3] Regarding the allegations that the operators of TMI violated NEPA, the Third Circuit stated "[NEPA] is directed toward the activities not of private parties but of the federal government. . . The sufficiency of [the NEPA claim] must be determined by the allegations that are directed against [the] NRC." *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F. 2d at 239.

in the court of appeals, *see Id.* at 239 (citing 42 U.S.C. § 2239(b); 28 U.S.C. § 2342: *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, Inc., 435 U.S. 519, 526-27 (1978)), the court found that the issue to be determined was "whether, despite the availability of review in the court of appeals when the NRC issues a final order, the district court has jurisdiction to compel compliance with [NEPA] by prohibiting such segmentation." *Id.* at 240. An important distinction, therefore, is that the final decision of the NRC was directly appealable to the court of appeals, there was no need to apply the APA.

The Court of Appeals held that the district court had immediate jurisdiction to review a challenge to the NRC's informal decision to authorize TMI to discharge contaminated water into the Susquehanna River, even though NEPA and the NRC's regulations provided for eventual review in the court of appeals after the NRC issued a final order. *Id.* at 239-241. The court also held that the plaintiffs were not required to exhaust all available administrative review procedures, because administrative review would be inadequate to prevent an illegal discharge[4] from occurring. *Id.* at 245. Nothing in the *Susquehanna* holding eliminates the jurisdictional predicates for judicial review under the APA-final agency action and no other adequate remedy.

Moreover, the facts in *Susquehanna* are far from "analogous" to the facts in the instant case. First, before TMI could proceed with the water treatment project, it was required to get approval of the NRC. *Id.* at 234. The SEA in the instant matter needs no such approval from the FHWA to proceed with the demolition of the Civic Arena and the redevelopment of the Arena site. In *Susquehanna*, the NRC, a federal agency, had in fact acted by granting "oral approval" for the installation of the wastewater treatment system at TMI and had initiated preparation of a draft environmental impact statement. *Id.* at 240. Here, there has been no action whatsoever by a federal agency with regard to the demolition of the Civic Arena or the subsequent

---

4  No such exigent environmental circumstance exists in the instant case.

redevelopment project. FHWA's only involvement in this case has been to explain to a member of the Pennsylvania Historical and Museum Commission, that the agency had no basis for becoming involved in the SEA project as there was no federal funding for the project. *See* Federal Defendant's Brief in Support, Attachment E.

The Third Circuit explicitly stated that NEPA is not directed to the activities of private parties, but only toward the activities of the federal government. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F. 2d at 239. The segmentation in *Susquehanna* was done by the NRC, allegedly to avoid the designation "major federal action" required to implement NEPA. Similarly, in the cases cited by Plaintiff in support of its illegal segmentation argument, there is underlying federal involvement not present in this case. In *Maryland Conservation Council v. Gilchrist*, 808 F. 2d 1039 (4th Cir. 1986), the highway project at issue received $245,000 in federal funds and required federal approval for construction through protected wetlands. *Id.* at 1042. In *Old Town Neighborhood Ass'n, v. Kauffman*, 333 F.3d 732 (7th Cir. 2003), the project involved the widening of a street that was part of a larger federal action involving improvements to U.S. Highway 33. *Id.* at 734.

Here there is no underlying federal activity that can support a claim of unlawful segmentation. Plaintiff's only claim of federal involvement is the exchange of correspondence between the SEA and FHWA, and reference to SEA's unsuccessful attempts to secure federal funding. These actions fall woefully shy of the federal involvement and control necessary to support jurisdiction under an unlawful segmentation theory. *See e.g. United States v. Southern Florida Water Management Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994)("NEPA applies only when there is federal decision-making not merely federal involvement in nonfederal decision-making"); *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir. 1988)("[T]he federal agency must possess actual power to control the nonfederal activity.").

Based on the foregoing, the Court finds that it has no jurisdiction under NEPA as: (1) there is no evidence of federal involvement by the FHWA; (2) there is no evidence that, even if there is future federal funding, the redevelopment will be a "major federal action"; and (3) there is no final agency action required for judicial review under the APA[5].

B. Section 4(f) of DOTA

Section 4(f) of DOTA provides in part:

> (c) The Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23) requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if--
>
> (1) there is no prudent and feasible alternative to using that land; and
>
> (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

49 U.S.C. § 303(c). Like NEPA, federal involvement is required under Section 4(f) of DOTA. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 405 (1971)( Section 4(f) "applies only to federally-funded transportation projects."); *see also Macht v. Skinner,* 916 F.2d 13, 15-16 n.3 (D.C. Cir. 1990) ("Because the expenditure of federal funds for preliminary planning and environmental impact statements does not federalize the Light Rail Project under NEPA, it similarly does not federalize the Project under § 4(f)."); *Adler v. Lewis*, 675 F.2d 1085,

---

[5] Courts have dismissed actions for failure to satisfy the APA's requirement of final agency action for judicial review under both Rule 12(b)(6) and Rule 12(b)(1). *See Oryszak v. Sullivan*, 576 F.3d 522, 524-525 (D.C. Cir. 2009)(An APA claim lacking agency action is properly dismissed for failure to state a claim, not for lack of jurisdiction.); *Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d 663 (E.D. Pa. 2005)( Dismissing an APA claim that had no final agency action for lack of subject matter jurisdiction on ripeness grounds).

14

1091 (9th Cir. 1982) ("Section 4(f) is triggered only when the Secretary of Transportation is asked to approve a transportation program or project seeking to employ federal funds."). The Court has already determined that there is no federal involvement in the matter.

Section 4(f) does not provide a private a private right of action, so claims thereunder can only be brought under the APA. *See N. Idaho Cmty. Action Network v. U.S. Dept. of Trans.*, 545 F.3d 1147, 1152 (9th Cir. 2008). Judicial review under the APA requires final agency action, and there has been no agency action in this matter. Plaintiff's claims under Section 4(f), therefore, fail and must be dismissed.

C.   NHPA

Under the NHPA, "the head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking . . . shall [] prior to the approval of the expenditure of any Federal funds on the undertaking . . . take into account the effect of the undertaking on any [historic district, building or site]." 16 U.S.C. § 470f. An undertaking includes "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval." 36 C.F.R. § 800.16(y). Clearly, there are no federal funds or licensure allocations to constitute a "federal undertaking" as defined under Section 800.16(y) of the Federal Regulations.

Plaintiff contends that jurisdiction exists under the APA because the FHWA had a legal responsibility under Section 110(k) of the NHPA, 16 U.S.C. § 470h-2(k), to prevent the SEA from engaging in anticipatory demolition. As set forth above, the judicial review provisions of the APA establish a cause of action for parties adversely affected either by final agency action or by an agency's failure to act. If a claim challenges an agency's failure to act, the action can only

15

proceed where it is asserted that an agency failed to take a discrete action that it was required to take. *Norton v. S. Utah Wilderness, supra., see also Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001)("[W]here 'an agency is under an unequivocal statutory duty to act, failure to so act constitutes, in effect, an affirmative act that triggers 'final agency action' review'").

Plaintiff argues that the FHWA had the legal authority and responsibility under the NHPA to take action and prevent potential applicants for federal funding from engaging in intentional anticipatory demolition. Section 110(k) prohibits federal agencies from issuing a loan, permit, license, or other assistance to an applicant "who, with the intent to avoid the requirements of Section 106, has intentionally, significantly adversely affected a historic property." 16 U.S.C. § 470h-2(k); 36 C.F.R. § 800.9(c). To trigger federal agency action under Section 110(k), however, there must first be an application for assistance presented to the agency. *See Brewery District Society v. FHWA*, 996 F. Supp. 750, 755 (S.D. Ohio 1998)("Section 470h-2(k) requires, at a minimum, that the City be an 'applicant' for 'a loan, loan guarantee, permit, license, or other assistance' before the statute's obligation on the federal agencies are triggered.").

Here, the SEA has not submitted any such application to the FHWA for federal assistance. Therefore, the FHWA had no legal duty under Section 110(k) to take action of any kind. Without a statutory duty requiring federal action, there is no "failure to act" sufficient to invoke "final agency action" review under the APA.

Plaintiff further argues that it can bring a claim directly under the NHPA because the Third Circuit has held that the NHPA creates a private right of action. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3d Cir. 1991). Notwithstanding Plaintiff's private right of action, like a NEPA action, federal involvement is required to invoke the NHPA. *See Gettysburg Battlefield Pres. Ass'n v. Gettysburg College*, 799 F. Supp. at 1580 ("Although the case law

16

addressing NHPA is far less extensive than that addressing NEPA, this court is persuaded that the invocation of NHPA involves a similar search for federal involvement . . ."); *Lee v. Thornburgh*, 877 F.2d 1053, 1056 (D.C. Cir. 1989) (The NHPA "imposes obligations only when a project is undertaken either by a federal agency or through the auspices of agency funding or approval.).

Plaintiff has failed to convince this Court that there is any federal involvement with the Civic Arena demolition and redevelopment project. Accordingly, Plaintiff's private right of action under the NHPA also fails. The Court further finds that Plaintiff's contention that the Court has jurisdiction over the SEA based on state law is irrelevant to its jurisdictional analysis.

## V. CONCLUSION

Based upon the foregoing, the Court shall dismiss this action in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. An appropriate order follows.

                                                                       s/ David Stewart Cercone
                                                                       David Stewart Cercone
                                                                       United States District Judge

cc:    Andrea C. Ferster, Esquire
        David F. Toal, Esquire
        Samuel W. Braver, Esquire
        Brian H. Simmons, Esquire
        Shawn N. Gallagher, Esquire
        Eric M. Merrifield, Esquire
        William G. Malley, Esquire
        Paul D. Kovac, AUSA
        Michael E. Kennedy, Esquire
        Daniel D. Regan, Esquire
        Elaine J. Wizzard, Esquire
        Craig E. Maravich, Esquire
        Michael H. Wojcik, Esquire

        (*Via CM/ECF Electronic Mail*)